## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA SHICK and RUSSELL SHICK,** | ) | **Case No. 3:18-cv-253** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PENNSYLVANIA DEPARTMENT OF** | ) | |
| **CORRECTIONS, JOHN E. WETZEL,** | ) | |
| **MICHAEL R. CLARK, and RYAN** | ) | |
| **SLEWISKI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (ECF No. 5.) This Motion is fully briefed (*see* ECF Nos. 6, 21) and is ripe for disposition. For the reasons that follow, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART.**

### I.    Background

Plaintiffs Linda and Russell Shick filed a five-count Complaint against Defendants on December 12, 2018. Plaintiffs are husband and wife. (ECF No. 1 ¶¶ 4-5.) Defendants are the Pennsylvania Department of Corrections ("DOC"), Secretary of Corrections John E. Wetzel, SCI-Albion Superintendent Michael R. Clark, and SCI-Albion hearing officer Ryan Slewiski. (*Id.* ¶¶ 6-16.)

Plaintiffs allege that Defendants:

(1)    violated Linda Shick's right to procedural due process under the Fourteenth Amendment of the Constitution (*id.* ¶¶ 96-105);

(2)     violated Linda Shick's Eighth Amendment rights by permanently banning her from visiting her incarcerated husband, Russell Shick (*id.* ¶¶ 106-08);

(3)     violated Linda Shick's First Amendment rights by prohibiting her from associating with her husband (*id.* ¶¶ 109-11);

(4)     violated Russell Shick's Fifth and Fourteenth Amendment rights by depriving him of procedural due process (*id.* ¶¶ 112-24);

(5)     violated Russell Shick's Eighth Amendment rights by depriving him of procedural due process and access his wheelchair (*id.* ¶¶ 125-29); and

(6)     violated Russell Shick's First, Sixth, and Fourteenth Amendment rights to counsel by opening and scanning mail containing privileged communications between Russell Shick and his attorney. (*Id.* ¶¶ 130-39.)

The Court derives the following facts, which it accepts as true for purposes of deciding the instant Motion to Dismiss, from Plaintiffs' Complaint.

## A.     Linda Shick is Accused of Attempting to Smuggle Drugs Through the Mail at SCI-Albion

On May 11, 2018, DOC officials at SCI-Albion confiscated a piece of mail that Linda Shick sent to her husband, Russell Shick, who is incarcerated at SCI-Albion. (*Id.* ¶¶ 18-20.) DOC officials confiscated the mail and claimed that it tested positive for the synthetic drug K-2. (*Id.* ¶¶ 21-25.)

Plaintiffs maintain that Linda Shick did not attempt to send K-2 to Russell Shick. (*Id.* ¶¶ 25, 42.) They allege that DOC officials "either intentionally falsely claimed that Mr. Shick's mail tested positive for K-2[,] that prison officials contaminated the relevant mail, or that the test was a false positive." (*Id.* ¶ 24.)

On May 15, 2018, DOC officials searched Mr. Shick's cell, but did not uncover any contraband. (*Id.* ¶¶ 27-28.)

**B.    Russell Shick Files a Grievance About the Confiscation of His Mail and Is Subsequently Moved to the Restricted Housing Unit**

On May 16, 2018, Russell Shick filed an inmate grievance complaining about the confiscation of his mail. (*Id.* ¶ 29.) He refiled his grievance on May 21, 2018, to include a copy of the "confiscated item receipt" per DOC policy. (*Id.* ¶¶ 30-32.) The DOC did not timely respond to Mr. Shick's grievance, and requested an extension of time to respond three days after the response period had passed. (*Id.* ¶¶ 33.) Then, he filed a Notice of Default requesting that the confiscated mail be provided to his attorney. (*Id.* ¶ 34.)

On May 25, 2018, a DOC staff member interviewed Mr. Shick about the confiscated mail. (*Id.* ¶¶ 36-37.) Mr. Shick believed the interview was in connection with his inmate grievance. (*Id.* ¶ 38.) At the interview, Mr. Shick confirmed that the confiscated mail contained his wife's handwriting. (*Id.* ¶ 39.) Then, DOC staff took Mr. Shick to a holding cell, where he remained for roughly six hours. (*Id.* ¶¶ 37, 43.)

When DOC officials took Mr. Shick to the holding cell, they confiscated his wheelchair, which he uses to deal with a hip condition that requires surgery. (*Id.* ¶¶ 43-44.) After approximately six hours in the holding cell, DOC officials moved Mr. Shick to the Restricted Housing Unit for "security reasons." (*Id.* ¶¶ 45-49.)

**C.    DOC Officials Hold Hearings on Russell Shick's Allegedly Contaminated Mail and Respond to His Grievance**

On May 26, 2018, Mr. Shick submitted a form—DC-141 Part II(A)—requesting representation and listing eight staff members as witnesses. (*Id.* ¶ 60.) Mr. Shick also submitted

a request for the DOC to identify the employee who deemed Mrs. Shick's mail to be suspicious, but DOC officials stated that they were not at liberty to provide that information. (*Id.* ¶ 61.)

On May 29, 2018, Mrs. Schick appeared before the DOC Program Review Committee to ask for his wheelchair to be returned, but his wheelchair was not returned until June 12, 2018. (*Id.* ¶¶ 63-65.) Plaintiffs allege that "[i]n violation of DC-ADM 801, i.e. prison policy and protocols, there was no commissioned officer on the [Program Review Committee] panel that day." (*Id.* ¶ 64.)

Then, on May 30, 2018, DOC officials held a hearing on the Shicks' allegedly contaminated mail in front of Hearing Examiner Ryan Slewiski. (*Id.* ¶ 66.) Mr. Shick was not permitted to present witnesses, present witness statements, and the DOC did not produce laboratory results showing that the mail was contaminated. (*Id.* ¶¶ 67-69.) Slewiski denied Mr. Shick's requests to consult with his attorney, to be represented by an attorney at the hearing, or to submit polygraph examinations to support his defense. (*Id.* ¶¶ 69-74.) Slewiski determined that Mr. Shick violated prison regulations by possessing drug contraband and sentenced him to sixty days of disciplinary custody. (*Id.* ¶¶ 77-78.)

On June 5, 2018, Mr. Shick was scheduled for a review of the Program Review Committee's decision. (*Id.* ¶ 82.) However, Mr. Shick was not transported to the hearing by DOC staff, so he did not receive a review. (*Id.*)

On July 12, 2018, Mr. Shick received a response to his grievance about the confiscation of his mail. (*Id.* ¶ 84.) A DOC employee named Tamie White informed Mr. Shick that his mail tested positive for K-2. (*Id.*) A misconduct report indicated that the Shicks' mail was tested using a

NARK II Synthetic Cannabinoids drug-detection pouch, which Plaintiffs allege is an unreliable method test method. (*Id.* ¶¶ 85-89.)

Finally, Mr. Shick also alleges that the DOC's mail policy prohibits him from receiving privileged communications from his attorney. (*Id.* ¶¶ 90-95.)

### D. DOC Officials Permanently Ban Linda Shick from Visiting Russell Shick

On May 25, 2018, Superintendent Clark wrote a letter to Mrs. Shick "that declared that she was permanently banned from visiting Mr. Shick or any other state correctional facility in Pennsylvania." (*Id.* ¶ 51.) Mrs. Shick was not permitted to visit her husband at SCI-Albion on May 31, 2019. (*Id.* ¶ 52.)

Plaintiffs allege that DOC policy authorizes indefinite suspensions of visitation rights, but that it does not authorize permanent bans. (*Id.* ¶¶ 54-57.) Plaintiffs also allege that DOC policy requires that any person who unlawfully introduced illegal drugs into a state correctional facility must be referred for criminal prosecution, but that Mrs. Shick was never referred for prosecution. (*Id.* ¶¶ 57-58.)

## II. Jurisdiction and Venue

The Court has subject-matter jurisdiction over Plaintiffs' claims because they arise under 42 U.S.C. § 1983. Therefore, the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1931 because a substantial portion of the events underlying this action took place within the Western District of Pennsylvania.

## III. Legal Standard

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786

(3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[1] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

[1] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (2010)).

## IV.    Discussion

### A.    The Court Will Dismiss the Pennsylvania Department of Corrections as a Defendant Because it is Entitled to Eleventh Amendment Immunity

The Court will dismiss the Pennsylvania Department of Corrections as a defendant because it is entitled to immunity under the Eleventh Amendment of the Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI.

The Eleventh Amendment has been generally interpreted "to immunize an unconsenting state from suits brought in federal courts by her own citizens as well as by citizens of another state." *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). "A suit that is brought against an entity that is in essence an 'arm of the state' is similarly barred by the Eleventh Amendment." *Lang v. Pa. Higher Educ. Assistance Auth.*, 610 F. App'x 158, 160 (3d Cir. 2015) (quoting *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658 (3d Cir. 1989)).

The Eleventh Amendment applies here because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania. *See* 71 PA. CONS. STAT. ANN. § 61; *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (holding that Pennsylvania DOC is immune to suit under the Eleventh Amendment); *Longo v. SCI Camp Hill*, 2019 WL 1141084, at *3-*4 (M.D. Pa. Jan. 14, 2019). The Court further finds that the DOC did not waive its immunity and

that Congress did not abrogate it. Accordingly, the Court will dismiss the DOC as a defendant in this matter.

## B. The Court Will Dismiss Counts I and III Because Linda Shick Does Not Adequately Allege a Violations of the First or Fourteenth Amendments

In Count I of the Complaint, Plaintiffs allege that the DOC, Wetzel, and Clark violated Linda Shick's Fourteenth Amendment right to procedural due process by failing to provide her with an opportunity to "defend against the false claim that she attempted to introduce K-2 into SCI-Albion." (ECF No. 1 ¶¶ 96-105.) In Count III of the Complaint, Plaintiffs alleges that "Mrs. Shick's First Amendment right to freedom of association with her husband has been violated by the DOC's permanent ban on her visiting with her husband." (*Id.* ¶¶ 109-11.)

Defendants argue that the Court must dismiss Counts I and III because the First Amendment and Fourteenth Amendment Due Process Clause do not create a constitutional right that entitles individuals to visit prisons. (ECF No. 6 at 3-9 (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 434, 460-61 (1989)).) Defendants argue that a prison's denial of visitation rights is legitimate so long as the denial is consistent with legitimate penological objectives of the corrections system. (*Id.* at 4 (citing *Johnson v. Cal.*, 543 U.S. 499, 510 (2005)).)

In response, Plaintiffs argue that Defendants violated Mrs. Shick's First and Fourteenth Amendment rights by restricting her access to visit her husband because Defendants' decision to ban her from prison facilities had no relationship to a legitimate penological purpose. (ECF No. 21 at 13-15.) Plaintiffs argue that "the legitimate penological interest at issue, i.e. the prevention of drug smuggling into correctional institutions, but the actions here were not rationally related to that purpose; accepting the factual allegations as true, it is *adverse* to that purpose." (*Id.* at 13.)

The Court finds that Mrs. Shick does not adequately plead a violation of the United States Constitution. To prevail on a claim under Section 1983, the plaintiff must allege that defendants violated plaintiff's constitutional right. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989); *Gayeman v. Sch. Dist. of City of Allentown*, No. 14-cv-1518, 2016 WL 3014896, *12 (E.D. Pa. May 26, 2016); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 754 (W.D. Pa. 2018) (Gibson, J.).

Here, the Court must dismiss Counts I and III because Mrs. Shick has no constitutional right to visit her incarcerated husband. Courts have consistently held that "[c]onvicted prisoners, their family and spouses have no constitutional right to visitation." *St. Clair v. Pa. Dep't of Corr.*, No. 3:13-06, 2014 WL 695582, at *3 (W.D. Pa. Feb. 24, 2014) (quoting *Young v. Vaughn*, No. 98-4630, 2000 WL 1056444, at *2 (E.D. Pa. Aug. 1, 2000) ("Face to face contact with a spouse is important in a marriage, but it is not a federal constitutional right."); *accord Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005).[2]

Moreover, Mrs. Shick's First and Fourteenth Amendment claims would fail even if a constitutional right were implicated. The Supreme Court has held that a correctional facility's decision regarding conditions of confinement, like visitation, will be upheld so long as they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine reasonableness, courts must consider; (1) the connection between the prison

---

[2] Plaintiffs allege that the Eastern District of Pennsylvania has recognized that "'spousal association' is a right as applied to the Due Process Clause." (ECF No. 21 at 14 (citing *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 382 (E.D. Pa. 2002)).) *Pahle* is inapposite. First, *Pahle* did not recognize any clearly defined constitutional right to associate or communicate with a spouse, let alone an incarcerated spouse. 227 F. Supp. 2d at 382. Second, the right "to marital integrity and spousal association" discussed in *Pahle* related to an injured spouse in the loss-of-consortium context, not where a spouse is incarcerated. *Id.* The Third Circuit has never adopted the Eastern District's reasoning in *Pahle*.

decision and the governmental interest supported; (2) the existence of alternative means of exercising the abridged right; (3) the impact of an accommodation of the abridged right on prison resources; and (4) the absence of alternatives for exercising the right at *de minimis* cost to penological interests. *Id.* at 89-91; *see also Vaughn*, 2000 WL 1056444, at *2; *St. Clair*, 2014 WL 695582, at *3.

Here, the DOC's decision to restrict Mrs. Shick's visitation rights was rationally related to a legitimate penological purpose—prohibiting the smuggling of drugs into SCI-Albion. *See Block v. Rutherford*, 468 U.S. 576, 586 (1984) (holding that there is a rational connection between restricting visitation and institutional security); *Pfender v. Sec'y of Pa. Dep't of Corr.*, 443 F. App'x 749, 752-53 (3d Cir. 2011) (holding that Pennsylvania DOC has broad authority to suspend visitation rights when it determines that a visitor possesses a security risk); *see also Overton v. Bazzetta*, 539 U.S. 126 (2003) ("The fact that the regulations bear a rational relation to legitimate penological interests suffices to sustain them regardless of whether respondents have a constitutional right of association that has survived incarceration. This Court accords substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them."). The only way to accommodate Mrs. Shick is to reinstate her visitation privileges, which may compromise prison security if she attempts to smuggle drugs into the prison. And reinstating her visitation privileges would require additional DOC resources to ensure that she does not attempt to smuggle drugs into SCI-Albion. Finally, it does not appear that there is any available alternative that would restore Mrs. Shick's visitation rights at a *de minimis* cost to penological interests.

It is irrelevant that Mrs. Shick denies that she attempted to smuggle drugs into SCI-Albion—the allegation that resulted in the suspension of her visitation privileges. "[D]enial of culpability does not create a triable issue of fact on the question of whether the suspension of her visiting privileges bears a rational relationship to legitimate penological interests." *Pfender*, 443 F. App'x at 753.

Accordingly, the Court will dismiss Counts I and III with prejudice. The Court will not grant leave to amend because the Court finds that Mrs. Shick cannot possibly allege a violation of the First or Fourteenth Amendments based on the denial of her visitation rights.[3] Even if she could allege that a protected constitutional interest was implicated by the DOC's decision, the DOC's ban on Mrs. Shick's visitation rights is permissible because it is rationally related to a legitimate penological interest.

## C.     The Court Will Dismiss Count II Because Defendants Are Entitled to Qualified Immunity

Count II of the Complaint alleges that Defendants violated Mrs. Shick's Eighth Amendment right against cruel and unusual punishment by permanently banning her from visiting SCI-Albion "based on false allegations that she attempted to introduce K2 into SCI-Albion." (ECF No. 1 ¶¶ 106-07.)

Defendants argue that the Court must dismiss Count II because the Eighth Amendment does not apply to individuals who are not confined or otherwise within DOC custody. (ECF No.

---

[3] "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *CollegeSource, Inc. v. AcademyOne, Inc.*, 579 F. App'x 116, 126 (3d Cir. 2015) (quoting *Philipps*, 515 F.3d at 245). Amendment would be futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Munchak v. Ruckno*, 692 F. App'x 100, 102 (3d Cir. 2017).

6 at 9.) Defendants point out that "no case . . . support[s] the conclusion that Linda Shick has standing to bring an Eighth Amendment claim in her own right against prison officials." (*Id.* at 10.) Finally, Defendants allege that even if Mrs. Shick can bring an Eighth Amendment claim against prison officials, that claim must fail because Defendants are entitled to qualified immunity. (*Id.*)

In response, Plaintiffs argue that the Eighth Amendment applies to both incarcerated and non-incarcerated individuals. (ECF No. 21 at 16 (citing *Comm. v. Melvin*, 103 A.3d 1, 56 (Pa. Super. Ct. 2014)).)

The Court finds that Defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Supreme Court has explained that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "Because qualified immunity bestows immunity from suit, the Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Thomas v. Indep. Twp.,* 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Conte v. Rios*, 658 F. App'x 639, 642 (3d Cir. 2016).

"To resolve a claim of qualified immunity, courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether

the right was 'clearly established' at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (citing *Pearson*, 555 U.S. at 232).[4] The Supreme Court has recently held "that clearly established law should not be established at a high level of generality," but instead must "be particularized to the facts of the case." *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (citing *White v. Pauly*, 137 S. Ct. 548, 552 (2018)).

Here, Plaintiffs clearly allege that Defendants violated Mrs. Shick's Eighth Amendment rights by permanently banning her from visiting her husband at SCI-Albion. But there was no clearly established right to visit an incarcerated spouse at the time that Defendants permanently banned Mrs. Shick from visiting her husband. As discussed in the preceding subsection, courts have consistently held that "[c]onvicted prisoners, their family and spouses have no constitutional right to visitation." *St. Clair*, 2014 WL 695582, at *3; *accord Neumeyer*, 301 F. Supp. 2d at 351, *aff'd*, 421 F.3d 210 (3d Cir. 2005). While the Supreme Court has addressed visitation rights, it has never held that there is a constitutional right of a nonincarcerated individual to visit prisons, including in the context of an incarcerated spouse. *Overton*, 539 U.S. at 131 (discussing the right to visit inmates and declining to hold that there is a constitutional right for nonincarcerated individuals to visit incarcerated relatives); *see also Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013), *cert. denied*, 571 U.S. 1209 (2014) ("The absence of controlling constitutional authority in this regard thus forecloses Williams' argument that, upon application of [the qualified immunity] standard, the warden should have been aware that [restricting visitation]

---

[4] As the Supreme Court has repeatedly explained, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011)).

violated a clearly established constitutional right."). Therefore, the Court finds that there is no clearly established right to visit incarcerated individuals.

Accordingly, the Court will dismiss Count II with prejudice because Defendants are entitled to qualified immunity.

## D. The Court Will Dismiss Count IV Because Russell Shick Does Not Allege a Deprivation of Procedural Due Process Under the Fifth and Fourteenth Amendments

Count IV of Plaintiffs' Complaint alleges that Defendants violated Mr. Shick's rights under the Fifth and Fourteenth Amendments by denying Mr. Shick an opportunity to contest Defendants' finding that Mr. Shick attempted to smuggle K-2 into SCI-Albion. (ECF No. 1 ¶¶ 112-24.) Plaintiffs allege that Mr. Shick was never provided with an opportunity to inspect the allegedly contaminated mail, was never provided with laboratory results, was prevented from presenting witnesses in his defense, and that the hearing officer for Mr. Shick's misconduct proceedings—Defendant Slewiski—was not impartial. (*Id.*)

In their Motion to Dismiss, Defendants argue that Mr. Shick's Fifth Amendment claim fails because the Fifth Amendment applies only to federal actors, and not state actors. (ECF No. 6 at 11-12.) Defendants argue that Mr. Shick's Fourteenth Amendment claim fails because prisoners in misconduct proceedings are not afforded Fourteenth Amendment protections, especially where prison officials impose a 60-day disciplinary sentence. (*Id.* at 13-14.)

In response, Plaintiffs do not dispute that Defendants are not state actors. (ECF No. 21 at 17.) Accordingly, the Court agrees that Mr. Shick's Fifth Amendment claim must fail. *See Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) ("[T]he due process clause under the Fifth

Amendment only protects against federal governmental action and does not limit the actions of state officials.").

Plaintiffs argue, however, that Mr. Shick's Fourteenth Amendment claim must survive because Defendants subjected Mr. Shick to an "atypical deprivation of prison life" by confining him in punitive segregation, restricting access to his wheelchair, and permanently banning Mrs. Shick from visiting. (ECF No. 21 at 17-18.)

The Court finds that Defendants' treatment of Mr. Shick does not trigger the procedural due process clause. It is well established that prisoners in disciplinary hearings are typically not afforded procedural due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Burns v. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011). "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest. *Burns*, 642 F.3d at 171 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).

In similar situations, other courts have held that sanctions to disciplinary confinement for periods of up to fifteen months do not trigger due process protections. *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997); *Smith v. Mesinger*, 293 F.3d 641, 653 (3d Cir. 2002); *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010). In *Smith*, the Third Circuit held that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest [thereby triggering procedural due process protection]." *Smith*, 293 F.3d at 653. Accordingly, the Court finds that the decision to send Mr. Shick to disciplinary custody for 60 days did not implicate the procedural due process clause.

-15-

The Court recognizes that Mr. Shick's procedural due process claim is also based on the restriction of his visitation rights and the alleged bias of the hearing examiner, Defendant Slewiski. Plaintiffs' argument on visitation rights is unpersuasive. The Supreme Court has held that prisoners do not have a protected liberty interest in seeing certain visitors. *Thompson*, 490 U.S. at 460-61 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)) ("The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' . . . and therefore is not independently protected by the Due Process Clause.").

Similarly, the alleged partiality or bias of the hearing examiner at Mr. Shick's disciplinary hearing, Defendant Slewiski, does not trigger the due process clause. *See Wilson v. Unknown Budgeon*, 248 F. App'x 348, 351 (3d Cir. 2007) ("Wilson challenges the impartiality of hearing examiner Kane, but *Sandin* prohibits us from considering whether Wilson is entitled to an unbiased hearing examiner.").

Despite the inadequacy of Mr. Shick's procedural due process claim as pleaded, the Court will allow him an opportunity to amend Count IV. In their response to Defendants' Motion to Dismiss, Plaintiffs argue that Defendants deprived Mr. Shick of procedural due process by confining him without his medically necessary wheelchair. (ECF No. 21 at 17.) However, Count IV of Plaintiffs' Complaint does not mention Mr. Shick's wheelchair as a basis for his procedural due process claim. (*See* ECF No. 1 ¶¶ 112-24.) However, because the Supreme Court has held that confined persons have a liberty interest in adequate medical care, *see Youngberg v. Romeo*, 457 U.S. 307, 324 (1982), the Court will allow Plaintiffs the opportunity to amend their Fourteenth Amendment claim to include allegations related to his wheelchair.

Therefore, in sum, the Court finds that Mr. Shick's claim for a deprivation of procedural due process under the Fourteenth Amendment fails as pleaded in the Complaint. Because amendment may cure the deficiencies in Mr. Shick's Complaint, the Court will dismiss Count IV without prejudice.

## E. The Court Will Not Dismiss Count V Because Russell Shick Alleges a Violation of the Eighth Amendment

Count V of Plaintiffs' Complaint alleges that Defendants violated Mr. Shick's Eighth Amendment rights by: (1) permanently restricting his ability to visit with his wife (ECF No. 1 ¶ 126); (2) failing to provide adequate procedures for Mr. Shick to contest the finding that he and his wife attempted to introduce drugs into SCI-Albion (*id.* ¶ 127); and (3) depriving Mr. Shick of the use of his wheelchair. (*Id.* ¶ 128.)

Defendants firstly argue that the Court should dismiss Count V of Plaintiffs' Complaint because the Eighth Amendment does not protect an inmate's visitation rights or the procedures by which an inmate may challenge a DOC determination. (ECF No. 6 at 15-16.) Defendants also argue that Mr. Shick's Eighth Amendment claim fails because he did not allege that "any named defendant was personally involved in the decision to take away his wheelchair. (*Id.* at 17.)

In response, Plaintiffs argue that Mr. Shick's Eighth Amendment claim should survive Defendants' Motion to Dismiss because the visitation ban and subsequent lack of procedures to challenge it violated the Eighth Amendment. (ECF No. 21 at 18-19.) Plaintiffs also argue that named defendants must have at least known of the decision to take away Mr. Shick's wheelchair because Defendant Slewiski conducted a hearing where Mr. Shick requested access to his wheelchair. (*Id.* at 19.)

The Eighth Amendment protects individuals against cruel and unusual punishment by government actors. "The Eighth Amendment's prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement." *Suggs v. Pa. Dep't of Corr.*, No. 07-170, 2008 WL 4222109, at *3 (W.D. Pa. Sept. 15, 2008). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

The Court finds that Mr. Shick adequately pleads an Eighth Amendment claim based on the permanent visitation ban and lack of access to his wheelchair. In *Overton*, the Supreme Court left open the possibility that a permanent ban on all visitation may violate the Eighth Amendment.[5] 539 U.S. at 137; *see also Henry v. Dep't of Corr.*, 131 F. App'x 847, 850 (3d Cir. 2005) ("In *Overton*, as we have seen, the Supreme Court strongly suggested that a permanent ban on all visitation might constitute cruel and unusual punishment."). Therefore, the Court finds that at the motion-to-dismiss stage, Mr. Shick has pled a plausible violation of the Eighth Amendment based on the permanent visitation ban.

Mr. Shick also alleges a plausible Eighth Amendment claim based on his lack of access to a wheelchair. He alleges that he needs his wheelchair due to a hip condition, but that he was deprived of his wheelchair for a nearly two-week period. (ECF No. 1 ¶¶ 44, 63-65.) Courts have

---

[5] Although Defendants do not raise a qualified immunity regarding Count V of the Complaint, the Court finds that Defendants are not entitled to qualified immunity on that claim. While there is no clearly established right for a nonincarcerated individual to visit an incarcerated spouse, as discussed with respect to Count II, language in the Supreme Court's *Overton* decision indicates that prisoners have a right to *some* visitation. *Overton*, 539 U.S. at 130, 133-34, 137. Therefore, the Court finds that it was clearly established that permanent bans on visitation may constitute violations of the Eighth Amendment. *Id.; see also Henry v. Dep't of Corr.*, 131 F. App'x 847, 850 (3d Cir. 2005).

held that deprivation of a wheelchair may constitute a violation of the Eighth Amendment where the prisoner has a medical need for the wheelchair, and prison officials are deliberately indifferent to that need. *See, e.g., Todd v. Walters*, 166 F. App'x 590, 592 (3d Cir. 2006); *Oleson v. Bureau of Prisons*, No. 09-5706, 2012 WL 6697274, at *13 (D. N.J. Dec. 21, 2012). Accordingly, the Court finds that Plaintiffs have adequately alleged an Eighth Amendment claim based on Mr. Shick's lack of access to his wheelchair.

The Court rejects Defendants argument that "Russell Shick has not made sufficient allegations . . . that any named defendant was personally involved in the decision to take away his wheelchair." (ECF No. 6 at 17.) Mr. Shick alleges that he requested the return of his wheelchair before a Program Review Committee on May 29, 2018, but that the wheelchair was not returned until June 12, 2018. (ECF No. 1 ¶¶ 63-65.) From the Complaint, it is not clear that any of the Defendants were personally involved in the decision to deprive Mr. Shick of his wheelchair. (*Id.*) However, given that Defendant Slewiski conducted a hearing involving Mr. Shick the following day, the Court must infer that Slewiski was aware that Mr. Shick had been deprived of his wheelchair after requesting its return the previous day. (*Id.* ¶ 66.) Based on this inference, the Court finds that Plaintiffs have sufficiently pleaded that Slewiski was deliberately indifferent.

Therefore, the Court will not dismiss Count V of Mr. Shick's Complaint because he adequately pleads an Eighth Amendment claim based on his wife's permanent visitation ban and a lack of access to his wheelchair.

**F.    The Court Will Not Dismiss Count VI Because Russell Shick Alleges a Violation of the First, Sixth, and Fourteenth Amendments**

Count VI of Plaintiffs' Complaint alleges that Defendants violated Mr. Shick's First, Sixth, and Fourteenth Amendment rights by opening and copying mail between Mr. Shick and his attorney, thereby violating Mr. Shick's "constitutional right of access to the courts and his attorney-client privilege." (ECF No. 1 ¶¶ 130-39.) Count VI is based on a DOC policy that all mail to inmates, including privileged communications, must be opened and scanned.

In their Motion to Dismiss, Defendants argue that Count VI of the Complaint must be either stayed or dismissed. (ECF No. 6 at 18-20.) Defendants argue that the Court should stay its resolution of Count VI pending the resolution of a pending case involving the same DOC mail policy in the Middle District of Pennsylvania. (*Id.* at 18.) Defendants argue that, in the alternative, the Court should dismiss Count VI because Mr. Shick does not allege that the DOC mail policy has harmed him. (*Id.* at 19-20.)

In response, Plaintiffs argue that staying Count VI of the Complaint is inappropriate and unnecessary because the parties may incorporate the Middle District's decision at the summary judgment stage.

The Court will not stay or dismiss Count VI. The Court will not stay adjudication of Count VI because the Court finds that a stay would not promote judicial efficiency or consistency in decision making. Since there are other related counts at issue in this case, judicial efficiency would not be promoted by adjudicating the other counts but not Count VI, which is closely related. Moreover, if the Court were to stay this case and the Middle District case ended in a settlement, the Court would have to adjudicate Count VI without guidance from the Middle

District. In other words, staying the case in that situation would have no effect except to delay adjudication of Count VI. And the Court agrees with Plaintiffs that the parties can incorporate any decision from the Middle District into their briefing on summary judgment.

The Court will not dismiss Count VI because Plaintiffs plausibly plead that Defendants violated of the First and Sixth Amendments, as incorporated to the states through the Fourteenth Amendment, by restricting his access to the courts. Generally, prisoners have a constitutional right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Bounds v. Smith*, 430 U.S. 817, 828 (1977). "[P]risoners have a constitutional right to access the courts, which includes a right to . . . legal assistance for the purpose of challenging their convictions, sentences, or conditions of confinement." *Adekoya v. Chertoff*, 431 F. App'x 85, 89 (3d Cir. 2011). "Prisoner[s] alleging that [they] were deprived of [their] right to access the courts must allege that [they] suffered some injury as a result of the deprivation." *Id.* (citing *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997)).

Here, Plaintiffs allege that "Mr. Shick's constitutional right of access to the court's [*sic*] and his attorney-client privilege are being violated by the DOC's mail policy." (ECF No. 1 ¶ 139.) Plaintiffs also allege that:

[t]here is often no other adequate means of regularly communicating with a client concerning privileged information other than by mail because phone calls are limited to fifteen minutes and inmates are reluctant to speak over the phone where the calls can be recorded and prison visitation is limited and state prisoners are often located at far distances from his or her attorney.

(*Id.* ¶ 35.) Plaintiffs also allege that Mr. Shick has a pending criminal appeal. (*Id.* ¶ 94.) From this, the Court must infer that Mr. Shick has been injured by the DOC's mail policy. Mr. Shick will be unable to effectively pursue this suit or his criminal appeal if his privileged

communications are opened and viewed by DOC staff. Additionally, the Court must infer that the interception of privileged communications may be especially damaging to Mr. Shick given that he alleges that DOC staff has retaliated against him for reporting drug activity at SCI-Albion. Accordingly, the Court will not dismiss Count VI of Plaintiffs' Complaint.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 5) is **GRANTED IN PART** and **DENIED IN PART**. The Court will dismiss the Pennsylvania Department of Corrections as a Defendant. Counts I, II, and III are hereby dismissed with prejudice. Count IV is dismissed without prejudice. Defendants' Motion is denied in all other respects.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA SHICK and RUSSELL SHICK, | ) | Case No. 3:18-cv-253 |
| | ) | |
| Plaintiffs, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS, JOHN E. WETZEL, | ) | |
| MICHAEL R. CLARK, and RYAN | ) | |
| SLEWISKI, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this __26th__ day of August, 2019, upon consideration of Defendants' Motion

to Dismiss for Failure to State a Claim (ECF No. 5), **IT IS HEREBY ORDERED** that the Motion is

**GRANTED IN PART** and **DENIED IN PART. IT IS HEREBY ORDERED AS FOLLOWS:**

(1)     Defendant Pennsylvania Department of Corrections is hereby dismissed as a defendant;

(2)     Counts I, II, and III are hereby dismissed with prejudice. Count IV is dismissed without prejudice. Defendants' Motion is denied in all other respects; and

(3)     Plaintiffs may file an amended complaint no later than 21 days after the Court enters this memorandum opinion.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE